IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 10-CR-30170-MJR |
| | ) |
| JOHN M. HARDIMON, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER
ON MOTION TO WITHDRAW GUILTY PLEA

REAGAN, District Judge:

A. Introduction

Federal Rule of Criminal Procedure 11(d)(2)(b) authorizes a district court -- after accepting a guilty plea but before sentencing -- to permit the defendant to withdraw his guilty plea, if "the defendant can show a fair and just reason." On the grounds articulated by the undersigned District Judge at the conclusion of the March 4, 2011 hearing and the bases below-described, the Court finds that Defendant Hardimon has *not* demonstrated a fair and just reason for withdrawing his guilty plea. Accordingly, the Court DENIES the motion to withdraw plea (Doc. 16).

B. Procedural Overview

On October 19, 2010, Dr. John M. Hardimon (a licensed chiropractic physician) appeared before the undersigned Judge, ably represented by retained counsel from St. Louis, Missouri. Hardimon waived indictment and pled guilty to a 15-count information. The written plea agreement and factual stipulations signed by Hardimon and his counsel (as well as counsel

for the Government) outlined in detail acts constituting 14 counts of health care fraud and 1 count of money laundering, in violation of 18 U.S.C. § 1347 and § 1957, respectively. Specifically, Hardimon was charged with defrauding health care benefit programs by submitting (via United States mail or interstate wire facilities) claims for services he never performed, services he did not perform as claimed, or services not covered by his patients' actual medical conditions. The programs defrauded by Hardimon were operated by both public and private insurance providers including, inter alia, Medicare, Medicaid, Blue Cross Blue Shield of Illinois, Healthlink, Blue Cross Blue Shield of Missouri, Blue Cross Blue Shield of Michigan, and the United Food and Commercial Workers Local 655 Welfare Fund.

On October 19th, following an in-depth colloquy in which the undersigned Judge directly conversed with Hardimon regarding his understanding of the charges he was facing and the rights he was relinquishing, the Court accepted Hardimon's plea, adjudged him guilty, and released him on bond pending sentencing. Six weeks later, Hardimon moved to withdraw his guilty plea, asserting that the plea "was neither knowing nor voluntary" (Doc. 16, p. 2), due to the fact that he had been taking two prescription medications – Prozac and Adderall – when he signed the plea documents (October 1, 2010) and when he pled guilty before the Court (October 19, 2010).

Actually, Hardimon was taking *three* medications in October 2010. He suffers from Adult Attention Deficit Hyperactivity Disorder (ADHD), anxiety, and depression. He had been taking a separate medication for each of these conditions – antidepressant and anti-anxiety drugs since 2004 and a medication for the ADHD since January 2008. He had taken all three medications in the proper dosage prior to and on the day when he pled guilty.

Seven days *after* his guilty plea, Hardimon saw his primary care physician for a routine visit. As described further below, the physician noted that Hardimon's mood was stable, and Hardimon reported that his ADHD medicine was doing well. The physician changed one of the three medications, the antidepressant (switching from Prozac to Lexapro). Hardimon contends that he almost immediately experienced "increased alertness, awareness and attentiveness" plus diminished depression, leading him to realize "that he should not have pled guilty to the ... Information" (Doc. 16, p. 2). Hardimon further contends that his old medications "prevented him from fully understanding" the charges against him and the Government's burden of proof as to those charges (*id.*, p. 3).

The Court issued and amended a briefing and hearing schedule on Hardimon's November 30th motion (see Docs. 17, 19, 24, 32, 38). The January 2011 hearing was postponed and additional time allotted for Hardimon to brief the issues, after he retained new defense counsel. Attorney Stephen Welby entered his appearance on January 25, 2011, and the Court permitted attorneys Drey Cooley and Sanford Boxerman of the Capes, Sokol law firm to withdraw as Hardimon's counsel. Mr. Welby filed a reply brief in support of Hardimon's motion on February 25, 2011. The Court conducted a hearing March 4, 2011. Evidence and arguments were presented by counsel. Analysis begins with reference to applicable legal standards.

C. Analysis

As noted above, Rule 11(d)(2)(b) allows withdrawal of a guilty plea prior to sentencing if the defendant shows a fair and just reason. Or, as the United States Court of Appeals for the Seventh Circuit put it: "A defendant does not have an absolute right to

withdraw a plea before sentencing, although the court may allow him to do so if he has a fair and just reason….." ***United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008).**

Defendant Hardimon's motion and supporting briefs tender two reasons to withdraw his plea: (1) the plea was not knowing and voluntary (due to his improper medication, high anxiety, and sub-par legal counsel), and (2) now that he is thinking clearly, he believes he is innocent of the charges against him. These assertions are examined in turn.

A guilty plea is knowing and voluntary if the court is satisfied, after "considering the total circumstances surrounding the plea, that the defendant was informed of his rights and understood the consequences of his plea." ***United States v. Mitchell*, 58 F.2d 1221, 1224 (7th Cir. 1995). *See also United States v. Blalock*, 321 F.3d 686, 688-89 (7th Cir. 2003).**

Without question, Defendant Hardimon was informed of his rights – both by his team of excellent defense attorneys from the Capes/Sokol law firm and by the undersigned District Judge. The Court commenced the March 4th motion hearing by playing the audio-recording of the lengthy in-depth October 19th plea colloquy[1] – a complete written transcript of which also was carefully examined by the undersigned Judge prior to the hearing.

The record discloses (and the Court remains convinced) that Dr. Hardimon fully understood the charges he faced and the consequences of his guilty plea. The undersigned Judge rejects the assertion that the prescription medications Hardimon was taking in October 2010 rendered him "incapable of understanding the true nature of the charges against him, his constitutional rights, and the consequences of his plea" (Doc. 16, pp. 2-3).

---

[1] At the time Hardimon entered his guilty plea, it was standard procedure in this District Court to record court proceedings via audiotape (in addition to the official written record being made by the stenographer). The operator of the audio equipment failed to capture the first few minutes of the plea hearing. Of course, the written transcript is complete.

Rule 11(b)(2) requires the District Court, before accepting a guilty plea, to "address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises," other than promises in the plea agreement itself. Review of the transcript of the October 19, 2010 change of plea hearing ("Tr.," Doc. 20) verifies that the undersigned Judge more than met that requirement here.

Defendant Hardimon was placed under oath before answering the Court's questions. He explained that he was 40 years old, and he had earned a bachelors and masters degree in chemistry, as well as a Doctor of Chiropractic degree. Asked if he was under the influence of drugs, medicine, or alcohol, Hardimon responded "Prescription medications." The Court inquired: "Do any of those medications affect your ability to think clearly?" Hardimon said: "No sir." Tr., pp. 2-3.

When the Court inquired further regarding the medications and any mental diseases or disorders, Hardimon explained that he suffered from anxiety, depression, and adult attention hyperactivity disorder (ADHD). Questioned about the medication for these, Hardimon confirmed that he was taking medication at a therapeutic level, and he believed the medications were working. The ADHD medicine (Adderall) increased his concentration but caused anxiety, so his physician prescribed him another medication to ease the anxiety. And he took an antidepressant as well. Tr. pp. 3-4.

This exchange followed (Tr., p. 4):

Q. Okay. As you stand before me, are you thinking clearly.

A. Yes sir.

Q. Do you think, given your mental status today, that you are capable of making decisions, serious decision, such as the one you

are about to make involving pleading guilty to this 15 count Information?

A. Yes, sir.

Q. Okay. Do you have any physical conditions or problems that affect your ability to think clearly?

A. No, sir.

The Court laid out in detail the consequences of pleading guilty, reminding the Defendant that he could stop the Judge at any point with a question, ask for something to be rephrased or repeated, or take a break to consult with his attorneys. The undersigned stressed: "I want to make sure that you understanding everything that is going on here today," and "We're not in any hurry whatsoever." The Court also cautioned Defendant in certain terms that it was a "very important and heavy decision" Defendant was making (to plead guilty), and "if I accept your guilty plea, I'll tell you at the end you're stuck with it," so "I want to make certain you understand what you are getting into, the rights you're giving up and your potential exposure in this case." Tr. pp. 4-5.

The undersigned asked if any threats, promises, duress, undue influences, or guarantees had been made to get Defendant to waive his rights (e.g., the right to grand jury indictment). Hardimon answered without hesitation, "No, sir." The Court inquired if Hardimon was pleased with his defense counsel. Hardimon answered affirmatively. The Court asked if there was anything defense counsel had refused to do or been unable to do. He answered negatively. The Court then directly asked Hardimon, "Q. Are you pleading guilty to the 15 counts … because you are, in fact, guilty as charged?," and Hardimon responded, "Yes, sir." Tr. pp. 6-7.

After details regarding the elements of his sentence (incarceration, fine, and restitution) were described, Hardimon verified that he understood each of these. The Court then asked if anyone had used threats, coercion, force, duress, promises, undue influence to secure his guilty plea, and Hardimon answered, "No, sir." The Court again asked if Hardimon was pleading guilty "because you feel it is in your best interest and you, in fact, are guilty as charged?" Hardimon said, "Yes." Asked if he had reviewed the plea agreement carefully with counsel before signing it, Hardimon said yes. Asked, "Do you understand everything in the plea agreement," he responded unequivocally, "I do understand, yes." Tr. pp. 7-11.

The Court continued with additional discussion of the specifics of the plea agreement, charge by charge, count by count. At the end of this exposition, the Court put more questions to Hardimon. Hardimon responded promptly and coherently to each. The undersigned repeatedly encouraged Hardimon to interject with any questions. Hardimon said he had no questions. The Court discussed the Government's burden of proof and Hardimon's rights during jury trial (to confront and cross-examine witnesses, to refuse to incriminate himself, etc.). Asked if he understood the constitutional rights he was giving up by pleading guilty, Hardimon again responded, "Yes, sir." The undersigned elaborated on the negative effects of the guilty plea, going beyond the basic information and touching upon the adverse consequences to Hardimon's future employment and his right to vote, hold public office, serve on a jury, or possess a weapon. Tr. pp. 12-20.

The Court covered both the Plea Agreement and the separate Stipulation of Facts, again verifying that Hardimon had reviewed the Stipulation in detail with his counsel

before signing it. The Court went through the Government's burden of proof on the elements of Counts 1 through 14 (health care fraud) and Counts 15 (money laundering) then queried:

> Q. Is everything in the Stipulation of Facts true, correct and accurate?
>
> A. Yes, sir.
> Q. Do you agree the Government can prove everything against you in the Stipulation of Facts beyond a reasonable doubt?
>
> A. Yes, sir.

Tr. pp. 20-22.

At one point during the discussion of the elements of proof on health care fraud, the transcript reveals a simple "Yes" to the question whether Defendant Hardimon agreed that the Government could prove all three elements beyond a reasonable doubt, but the undersigned Judge, carefully observing Defendant, noticed what appeared to be a slight hesitation and the fact Hardimon had turned to his counsel before responding.[2] The Court stopped the proceeding to make absolutely sure nothing was amiss and, again, reminded Hardimon that it was not too late to exercise his right to proceed by jury trial rather than guilty plea: "There was hesitation there. I know you talked to your attorney, which is fine. Now is the time for you – if you don't want to go to trial…. If you want a trial, I'll give it to you. Once you admit these things and I accept your guilty plea, you're stuck with it. Are you confident in pleading guilty?" Hardimon said yes. Tr. pp. 20-21.

Toward the end of the colloquy, the undersigned yet again asked if Hardimon had understood the proceedings (Hardimon said yes), asked if Hardimon had any questions or

---

[2] It is the habit of the undersigned Judge to describe, for the record, any unusual body language of the defendant/witness or happenings that would not appear in the written transcript of the court proceeding.

"anything whatsoever" to discuss with the Court (Hardimon said no), and asked if Hardimon understood that if the Court accepted the guilty plea, Hardimon could not change his mind and would be "stuck with [his] guilty plea as to all 15 counts" (Hardimon said yes). The Court asked both Government counsel and defense counsel if they wanted any additional colloquy regarding the plea agreement, the constitutional rights, or anything under Rule 11. Both answered in the negative. Tr. pp. 22-23.

The colloquy (as memorialized in the written transcript *and* the audio recording (both of which the Court reviewed in assessing the pending motion) was exhaustive, detailed, specific, and thorough. The undersigned Judge had abundant opportunity to observe, question, and interact with Defendant Hardimon. Hardimon showed no signs of being disoriented, muddled, alarmed, upset with his counsel, unsure of his decision, or the victim of threats or duress. He provided his answers under oath, expressed his grasp of the proceedings, communicated clearly, and acted appropriately.

Seventh Circuit law provides a presumption of truthfulness to a defendant's sworn answers during a Rule 11 plea colloquy. As Judge Rovner summarized in ***United States v. Schuh*, 289 F.3d 968, 974-75 (7th Cir. 2002):**

> A district court may allow a defendant to withdraw his guilty plea any time before sentencing if the defendant provides a "fair and just reason."… At a hearing Lane testified that he was pressured into pleading guilty, thus claiming that his plea was not knowing and voluntary. Because a careful plea colloquy under Rule 11 ensures that the guilty plea is knowing and voluntary, determining whether the district court abused its discretion "depends, in large part, on what the defendant said during the Rule 11 colloquy." *See United States v. Ellison,* 835 F.2d 687, 693 (7th Cir. 1987). Moreover, representations made at a Rule 11 hearing are accorded a "presumption of verity." *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000).

Similarly, the Seventh Circuit has declared that defendants who receive a thorough Rule 11 colloquy face an "uphill battle" if they later seek to withdraw their guilty plea. ***See United States v. White***, 597 F.3d 863, 867 (7th Cir. 2010); ***United States v. Bennett,*** 332 F.3d 1094, 1099 (7th Cir. 2003). In other words:

> When a proper Rule 11 colloquy has taken place, a guilty plea enjoys a presumption of verity and **the "fair and just" Rule 11(d)(2)(B) escape hatch is narrow.** *United States v. Roque-Espinoza*, 338 F.3d 724, 726 (7th Cir. 2003). A defendant's burden of showing the existence of a fair and just reason is heavy in such circumstances.

***United States v. Mays***, 593 F.3d 603, 607 (7th Cir. 2010)(emphasis added), *cert. denied*, 130 S. Ct. 3340 (2010).

Defendant Hardimon does not fit through the slender escape hatch. He supplied voluntary responses under oath at his Rule 11 colloquy, and those responses are binding. ***White*, 597 F.3d at 868.** The record is wholly devoid of support for the claim that did not understand what he was doing when he signed the plea documents and/or when he pled guilty before the Court on October 19th. The record is likewise devoid of support for Hardimon's argument that his plea was involuntary due to pressure from Government counsel or law enforcement agents.

Hardimon intimated that the Government created an atmosphere of tension by "conducting raids" on his home and office, setting a truncated deadline to accept a plea offer, and making thinly-veiled threats to his wife. The Government properly executed search warrants, no "raids" were made on Defendant's home or business, there is nothing unseemly about setting a deadline to accept a plea offer, and zero evidence indicates that Mrs. Hardimon

was ever threatened by any law enforcement agent or prosecutor. And as to Hardimon himself being pressured, it bears note that he signed the plea documents on October 1, 2010 and did not appear before the undersigned Judge to enter his guilty plea until October 19, 2010. This 18-day time interval, which gave more than ample time for reflection, belies any claim that Hardimon was pressured into a hasty decision.

Nor does the Court find merit in Hardimon's bad medicine argument. While testifying at the March 4th hearing, Hardimon continually referenced the *anxiety* which plagued him in the period leading up to and on the day of his guilty plea. He also claims he had tremendous difficulty focusing and concentrating in Court on October 19th, and he faults the "improper course of treatment" he was on in October 2010 for preventing him from understanding the legal issues surrounding his plea. These arguments are unavailing.

First, Hardimon's contentions that he could not concentrate or think clearly are belied by his demeanor, conduct, and answers during the lengthy plea colloquy with the undersigned Judge. Hardimon was focused, aware, alert, responsive, engaged, communicative and coherent. Nothing suggests he was incompetent, lacked awareness, was unable to focus, could not grasp what was occurring, or failed to realize the consequences of his plea.

Second, Hardimon had a multitude of valid reasons to be anxious (e.g., the federal investigation of his billing practices, having been caught submitting false claims to numerous insurance providers, the substantial costs of his legal defense, personal problems facing his wife, mounting dissatisfaction with his lawyers for not following what he perceived to be an agreed "game plan"). The Court does not doubt that Hardimon felt nervous, perhaps even fearful about his world crashing around him. But stress does not render an educated,

well-represented middle-aged man from comprehending and processing information; and anxiety does not divest him of the ability to control his decision-making. Moreover, Hardimon was taking medication prescribed precisely to assist with anxiety (he identified this drug as Klonopin at the March 4th hearing), and he admitted at the plea colloquy that it was effective.

Third, Hardimon's assertion regarding the change in his medications is not credible. He was on three medications before and during his plea – Adderall for his ADHD, Klonopin for anxiety, and Prozac to combat depression. He would have the Court believe that leaving two medications *unchanged* (the Adderall and Klonopin) and merely substituting one SSRI antidepressant (Prozac) for another SSRI antidepressant (Lexapro)[3] one week post-plea had a swift and profound effect on him, an effect so dramatic that the proverbial scales fell from his eyes (like St. Paul in the conversion story), and he suddenly realized he was innocent.

His affidavit states: "Taking Lexapro, I now truly understand the charges … and … truly believe that I am not guilty of the counts alleged in the … Information" (Doc. 16-1, p. 3). He submitted no medical testimony or other evidence to bolster the claim that changing from Prozac to Lexapro on October 26th could (a) take effect so rapidly and (b) produce the remarkable increased clarity he attributes to the antidepressant. Interestingly, Lexapro was not a "new" drug to Hardimon. He had taken Lexapro previously *for five years* but changed to Prozac in 2009 to avoid a side-effect of Lexapro. According to his March 4th testimony, Hardimon was on a 10mg daily dose of Lexapro from 2004 until 2009, and he switched to Prozac because the Lexapro caused him weight gain. If Lexapro was such a wonder drug for

---

[3] SSRI stands for Selective Serotonin Reuptake Inhibitor, a class of anti-depressants that ease depression by affecting (changing the balance of) neurotransmitters in the brain. *See* www.mayoclinic.com/health/ssris.

Hardimon, it is curious he asked to stop taking it in 2009 (and more curious that it took him until November 2010 to realize the Prozac was interfering with his ability to think clearly).

Fourth, even if the Court accepted as true that Hardimon felt and thought better when he returned to Lexapro from Prozac one week after the October 19th plea, Hardimon's sworn testimony at the plea colloquy was that his then-current medications were at therapeutic levels, were working, and he was thinking clearly on them. For instance, he testified at the plea hearing that the Adderall "makes me concentrate more" and "definitely increases my alertness" (Tr., p. 4).

Exhibits introduced into evidence by Hardimon at the March 4th motion hearing furnish further proof that his prescription medications were effective in treating the very focus and anxiety problems he now contends *prevented* him from understanding the plea he entered. Notes from an August 10, 2010 office visit with Dr. L. Peter Zhang, M.D., Ph.D., reflect a complaint of moderate anxiety but a "therapeutic response to Adderall with good motivation and energy" (Def. Exh. A, p. 3). They also reveal that Hardimon was appropriate in behavior, communication, mood, affect, eye contact and speech (*id.*). And notes from an October 2010 routine check-up with Dr. Robert T. Farmer, Hardimon's primary care physician, reflect that the Adderall (prescribed by Dr. Zhang in 2008) was working well to correct Hardimon's focus problems, that Hardimon's sleep was "ok," and his mood was stable (Def. Exh. A, p. 2).

Fifth, the Court finds neither credible nor persuasive Hardimon's argument that lackluster performance by his sequence of prior defense attorneys (each of whom he selected and retained) exacerbated his stress levels and left him with "limited information" going into the plea hearing. The lawyers who represented Hardimon at his change of plea in this Court are

brilliant, well-respected, professional attorneys who, without fail, are exceedingly well-prepared when they appear before the undersigned Judge. This casts grave doubt on Hardimon's accusation that they railroaded him into a guilty plea and left him without sufficient information to intelligently opt to plead guilty.

Plus, the undersigned Judge directly quizzed Hardimon at the plea hearing about whether he had *any* complaints regarding his counsel and whether they had failed to do *anything* he asked – he said no to both. In fact, Hardimon testified under oath that he was fully satisfied with the advice and representation his counsel provided him in this matter. The idea that ineffective lawyering resulted in Hardimon involuntarily or unknowingly pleading guilty is preposterous.

Which leaves only Hardimon's contention that he should be permitted to withdraw his plea, because he is "innocent" of the charges to which he pled guilty. A defendant's claim of innocence, standing alone, does not justify withdrawal of a guilty plea. **United States v. Hoke**, 569 F.3d 718, 720 (7th Cir. 2009); **United States v. Groll**, 992 F.2d 755, 758 (7th Cir. 1993). A defendant must substantiate any such claim with *evidence* of his innocence. **Id.** Hardimon produced no evidence at all. Here is all he offers -- he now "feels" he is not guilty of these crimes, and he "believes" he lacked the requisite intent, especially because he "was always there" for his patients if they needed him or had questions.

Seventh Circuit caselaw distinguishes between claims of "legal innocence" and claims of "actual innocence." **See, e.g., Mays**, 593 F.3d at 607 (7th Cir. 2010), *citing United States v. Carroll,* 412 F.3d 787, 792 (7th Cir. 2005)(actual innocence), and **United States v. Rinaldi**, 461 F.3d 922, 927 (7th Cir. 2006)(legal innocence), *cert. denied*, 552 U.S. 1062 (2007).

This Court need not delve into that distinction, because Hardimon has neither identified newly discovered evidence showing him to be actually innocent nor pointed the Court to a post-plea pre-sentencing Supreme Court opinion bearing on his "legal innocence." He fails under either approach. He merely suffers from second thoughts about his guilty plea.

Hardimon has demonstrated a classic case of pleader's remorse, nothing more. Discontent at his situation, he blames everyone around him – the law enforcement agents who executed the search warrant, the investigators, the prosecutors, his own lawyers, even his wife. Remorse does not constitute a fair and just reason to set aside a guilty plea.

### D. Conclusion

Assisted by superb counsel, Dr. John Hardimon voluntarily and knowingly pled guilty before this Court. He was not pressured or coerced to plead guilty. He was given ample opportunities to elect to proceed via indictment and jury trial, all of which he declined. The undersigned Judge engaged in a lengthy and substantial inquiry which clearly established that Hardimon knew he was guilty, understood the consequences of pleading guilty, and wanted to do so. Nothing in the record rebuts the presumption of verity cloaking Hardimon's sworn testimony at the plea hearing. ***United States v. Walker*, 447 F.3d 999, 1004 (7th Cir. 2006).**

Defendant has not demonstrated – and the record does not contain – a fair and just reason permitting withdrawal of the guilty plea. For this reason, and as stated in open Court at the close of the March 4, 2011 hearing, Defendant's motion to withdraw plea (Doc. 16) is **DENIED**. Sentencing will proceed as scheduled on March 24, 2011.

IT IS SO ORDERED.

DATED March 15, 2011.

s/ ***Michael J. Reagan***
Michael J. Reagan
United States District Judge